**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| H-D U.S.A., LLC, | ) | Case No. 16-cv-07923 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Judge Manish S. Shah** |
| v. | ) | |
| | ) | **Magistrate Judge Maria Valdez** |
| ZHANG JIN XIAN, ZHAO DEQUN, | ) | |
| ZHANGZONGZE, ZHANGLI ZHANGLI, | ) | |
| ZHANGJINXIAN, ZHANG XIAN, | ) | |
| XINCHUAN WANG, XIAOZHANG, WVS- | ) | |
| SWS.BE, WU YULAN, WU YUANFENG, WU | ) | |
| YAXUAN, WU XIAN YONG, WINN-KHAN | ) | |
| EMILY, WILLIAM WALKER, | ) | |
| WELLENSTEYN INTERNATIONAL GMBH | ) | |
| & CO. KG IS ASSOCIA, VYACHESLAV | ) | |
| OMELYANENKO, VENDROUX J.C, UTE | ) | |
| LEHRER, URSZULA GAWRYOLEK, | ) | |
| TURNER JACKIE, | ) | |
| TRANSVAALSTEEDSBETER.NL, TOM | ) | |
| VERHAGEN, TING LIN, TING LIN, TIM | ) | |
| GOLDEN, THOMAS FAERBER, TEKEN- | ) | |
| THEATER.NL, TARA  KNOX, | ) | |
| TANDARTSENINBEELD.NL, SZABONE | ) | |
| ADRIENN, SYNDICATA.NL, SVEN | ) | |
| KUEFER, SUN HAO, SUE EVERETT, | ) | |
| STARLING BUILDING CO PTY LTD, | ) | |
| SLIWINSKA GOSIA, S-L OWENS-PETERS | ) | |
| MRS, SILBER MENDEL, SHAUN LINNELL, | ) | |
| SEAN SCOTT, SCOTT ALISON, | ) | |
| SATTLEGGER ANNA, RYAN HOLMES, | ) | |
| ROSIE FITZGERALD, ROOTEC.EU, | ) | |
| ROELOFS-CONSULTANCY.NL, ROBERT | ) | |
| RICHARDS, ROBERT BLYTHIN, ROBERT | ) | |
| VAUGHN, RIJSCHOOLBALABAN.NL, | ) | |
| RICKMAM DAVID, REMO KURKA, | ) | |
| RAMSAY GORDON, RALF FURST, | ) | |
| RACINGSUITFR.COM, PORTAIL- | ) | |
| LENORVEGIEN.EU, PITHER EMILY, PETRA | ) | |
| DOMBROWSKY, PETER HYDE, PAYNE | ) | |
| MATTHEW, PAUL STAHL, PAUL | ) | |
| CZARNECKI, PAUL CUTHBERTSON, | ) | |
| OSCAR TALLEC, NOAH WATERS, NICOLA | ) | |

EVANS, NIAMH SCHOFIELD, NAFEES )
KHADIJAH, MYRIAM CATRIN MYRIAM )
CATRIN, MULINOSTYLING.NL, MOYA )
WATTON MOYA WATTON, MOORHOUSE )
MIMI, MINGJUN WANG, MIAMA MOORE, )
MESTON RACHEL, MCGIRR MARGARET, )
MCCANN STEPHEN, MAX FREITAG, )
MASOOD AHMED, MARTIN ROSS, )
MARSHALL PHIL, MARIE URNER, )
MARGARET COBAIN, MANDY )
ABENDROTH MANDY ABENDROTH, )
MADDISON HAMILTON, LOUIE )
HARRISON, LOGAN MCDONALD, )
LOCKETT ALAN, LIU WEI, LINKBUILD.BE, )
LINDA WRIGHT, LILI CHEN, )
LIKESRUILEN.NL, LIBBY HENDERSON, )
LIAO ZHANG, LEON ANDREWS, LAUREN )
BECK, KUFKLUBBEN.SE, )
KRACHTTOERRADIO.NL, KOVACS )
CSABA, KLAUS EICHEL, KLAUDIA )
SCHREIBER, KE XIN XIAN, KATIE WHITE, )
KATHERINE GILL, KARIMAGOKO )
BARBARA, KAREN HEARN, KANNOO )
JAKE, KAARTMETEENKLIK.NL, JONES )
DAVID, JONATHAN WHITEHOUSE, JOHN )
SAUNDERS, JODIE WALSH, JILL BROWN, )
JAPPELKEARLS.NL, JANINA BADER, )
JAMES BARKER, JACKETS SALE, JACKETS)
SALE, HUWAI, HUNT ISABEL, HUIXIAN )
CHEN, HUI MING ZHANG, HUGHES BEN, )
HUANGZHILONG HUANGZHILONG, )
HUANG ZIYOU, HOPKIN JULIE, HONG )
PUYI, HOLTER GEOFF, HOLLIE )
HUTCHINSON, HDVESTES.EU, )
HDLEATHER.CA, HDJACKETS.CA, )
HARTVOORAJAX.NL, )
HARLEYJACKETS.CA, )
HARLEYDAVIDSONJACKET.CA, HANLEY )
MATT, HAN JIANKANG, HAMBALI )
FAIZAH, HAIHAI LIN, GREPPERUD EDNA, )
GREENBLATT SHARON, GIEDRE )
LUKSAITE, GIBBONS PAMELA, )
GELOOFINCARNISSE.NL, FRANK )
WEXLER, FRANK MOENCH, FRANCIS )
HOFFMAN, FERNANDES SYLVIE, FEI )
CHEN, FANCHENG CHEN, FABULANT.NL, )

ERIC LEE,                                                    )
ERGAATEENWERELDVOORJEOPEN.NL,         )
EETCAFEDAVINCI.NL, EDWARDS                   )
KRISTIAN, EDWARD BAKER, EAS-                  )
ERGO.NL, DOMINIC JOHNSTON, DOMINIC )
DALY, DEROFOTO.NL, DENG                         )
YONGXIANG, DECLAN SUMMERS,              )
DECLAN CHAMBERLAIN, DAVIES               )
MEIRION, DAVID PERKS, DANILO              )
HAYNES, DAN JAMES, CRITCHELL RAY,    )
CRAIG COGHILL, COUPER LEE, CHRYSO    )
MATTHAIOU, CATTERY-ALBATROSS.BE,   )
CATTERALL DEBBIE, CARADVICE.COM      )
LIMITED, CAPON PHIL, CAPLIN ANGELA,   )
CAITLIN MCCARTHY, BRANCEFRANK,        )
BLUESANDFRIENDS.NL, BIRTWISTLE          )
HEATHER, BERND KRUEGER BERND            )
KRUEGER, BELL LISA, BELL JANE,               )
BEALES LOREN, BAIYANG CHEN, BAIBAI )
CHEN, ANTJE KOCH, ANNA URRO BEN,     )
ANJA AACHEN, ANDREW WOODWARD,       )
AMY NICHOLSON, ALISON TWITCHELL,    )
ALISHA DAVIS, ALICS, AIDAN COX,            )
ADRFOTO.NL, AAFKEHIEMSTRA.NL,          )
5DAYBOON.BE, 0HK2373, 1022898_,              )
13802426435_, 15920481060_,                       )
15LEATHERSTORE, 2010VIVI2010,              )
48EXPRESS-IE, 5_CHEN8,                              )
53MOTORPLAYER, 6_30273, 7HK8705, 9-    )
04765, 913PPLXX, ABEY LI, ALIYA_SMILE, )
AMPMAUTOPARTS, ANGELIA STORE,          )
ANGELS_CASTLE, ANIME KEYCHAIN          )
FRANCHISE STORES, ANIME_CHENG, A-     )
ONE PATCH, AREYOURSHOP-A,                   )
AREYOURSHOP-V, ARTOFLIFEWAY,           )
AULDLANGSYNE88, AUTODOCTOR1980,      )
BESTMATCH2U, BLABLA200912,                   )
CANGNAN VERIZON CRAFTS CO., LTD.,     )
CARMOTORS611, CHAN19851985,                  )
CHENBO94032, CHENG201568,                      )
CHINA_IMAGE, CLIENTFIRSTWORLD,        )
COMEBUYBEST, CONCEPT OF MODIFIED, )
COS999X, COS-WIGS,                                    )
CRAZYOURCASEME, CRYASTAL, CYXIF,   )
DASHENG_TIELIANG, DAYS_UP, DREAM-    )
USA, D-SIGN*2014, EASTARINTL9,             )

EKKS01, EPOWERSTORE11, )
ERLINGERSHOP, ETAWS_DIRECT_SALES, )
ETERNAL FASHION APPAREL & )
ACCESSORIES, FAKLUEWT, )
FANGFANGMART, FASHION- )
JEWELRY1987, FEI HONG GLOBAL )
WHOLESALE, FIND_U_SEXY_ALL, )
FINELY*4, FORTUNE GOD, GCAS1430, )
GETYOURSAVE, GLOBAL360PROMO, )
GOLDENAPPLESTORE, )
GOLDENCROWN11, GOODDEAL.GET, )
GOOD-DONGDONG, GREATTOOL1015, )
GREEN'S HOUSE, GT.INTHEBOX, )
GUANGZHOU KANGNAI GARMENT CO., )
LTD., H&C ACCESSORIES, HAINING )
LEEKWAN INTERNATIONAL TRADE CO., )
LTD., HAPPYBTY, HAVINCHAN, )
HBMOTO15, HKMERCURYSHOP2012, )
HONTOP, HTPOW, HUASHENG TRADE )
CO.,LTD., HXL2012, IBTOM_HOME, )
INLEADERSTYLE, JINGWL3, )
JINGZHONG20102010, JIN-MERCHANT )
NO.1, JOYC365, JPGJ8869AA, KE FENG )
JEWELRY FACTORY, KENLIN_01, )
LESS10.LTD, LIFE-CRAZY, LIVECITY2014, )
LIWEIWEILI001, LUCKY4YOU2012, )
MAGICKINGDOM699, MAPLEMOTO- )
SHOP8, MAURO.CO.LTD, MEET YOU )
FASHION JEWELRY, MEETALLGOOD, )
MEIKY12072012, MEIMEI8866, )
MERRYGIFTSSHOW, )
METOO_MOTORFANS, MICHAEL110813, )
MILLIONNESC, MOON0602, MOTO_HT, )
MOTOO MOTORCYCLE PARTS CO., LTD, )
MOTOPROS, MOTOR_KNIGHT, )
MQ.D.STORE, NANA90STORE, )
NATURALISM JEWELRY STORE, )
NAZAMUDIN, NEWYOUTUBE, NICE0016, )
NODOTAUTO, NORDSON-US, ONLINE )
STORE 237368, ONLY TIN SIGN, )
PETDOG13, PICKBESTFORYOU, )
PINKLADY10688, PREETYRIVA, )
PRETTYLIFE2000, PUNK SHOW TRADING )
CO., LTD., RACING-PARTS2015, )
REDDRAGONFLY2013, RINGS2012, )
ROYMINSHOPV3, RUIRUI2014, )

SAMUEL88LP, )
SCHMUCKWELTYANGYANG, SHANGHAI )
SHUOYU COMMERCE CO., LTD., )
SHARELIFE01, SHENZHEN ONEOK METAL )
& PLASTIC PRODUCTS CO., LTD., )
SHENZHEN QESTBUY ELECTRONICS CO., )
LTD., SHENZHEN WANGSHUN COMPUTER )
EMBROIDERY CO., LTD., SHOOT4U2012, )
SIMBANEVERLAND8, SINO_XU2008, )
SLAMETMULYONO, SMILESELL2015, )
SNOW-PANDA2013, STARSHIELD, )
STITCHRIDER, SUN8-5358, )
SUNNY_CASTLE, SUNRISE APPLIANCES, )
SUPER_MOTO, SUPERYUAN0526, )
SURPASS2015, SUSIEZOE2015, )
TENVIEW2013, TINAFORYOU, TKSPEED )
PERFORMANCE LTD.,CO, TOHDA57, )
TSAN_GLEN, ULTRA_SUPPLIER, WALL )
ART STORE, WAMOU, WANG878802-2, )
WEHK179, WONDERFULWISH, WZY0825, )
XIUP.2014, XPHEONIX, XY2015, Y&H )
YOLANDA HOUSE, YCXTRADE, )
YESALL0601, YESERUS2016, YFMEMBER, )
YIWU SHIRAN ORNAMENTS FACTORY, )
YOLANDABABY777, YUANQIU8790, )
ZH_US05, ZHAYANSHAN, ZHONGSHAN )
WANJUN CRAFTS MANUFACTURER CO., )
LTD., ZHONGSHAN YIXUAN CRAFT AND )
GIFT CO., LTD., ZZ0WANSHEN, and )
ZZAHUAN, )
)
_____Defendants._____ )

## AMENDED COMPLAINT

Plaintiff H-D U.S.A., LLC ("Harley-Davidson" or "Plaintiff") hereby brings the present

action against ZHANG JIN XIAN, ZHAO DEQUN, ZHANGZONGZE, ZHANGLI ZHANGLI,

ZHANGJINXIAN, ZHANG XIAN, XINCHUAN WANG, XIAOZHANG, WVS-SWS.BE, WU

YULAN, WU YUANFENG, WU YAXUAN, WU XIAN YONG, WINN-KHAN EMILY,

WILLIAM WALKER, WELLENSTEYN INTERNATIONAL GMBH & CO. KG IS ASSOCIA,

VYACHESLAV OMELYANENKO, VENDROUX J.C, UTE LEHRER, URSZULA

5

GAWRYOLEK, TURNER JACKIE, TRANSVAALSTEEDSBETER.NL, TOM VERHAGEN, TING LIN, TING LIN, TIM GOLDEN, THOMAS FAERBER, TEKEN-THEATER.NL, TARA KNOX, TANDARTSENINBEELD.NL, SZABONE ADRIENN, SYNDICATA.NL, SVEN KUEFER, SUN HAO, SUE EVERETT, STARLING BUILDING CO PTY LTD, SLIWINSKA GOSIA, S-L OWENS-PETERS MRS, SILBER MENDEL, SHAUN LINNELL, SEAN SCOTT, SCOTT ALISON, SATTLEGGER ANNA, RYAN HOLMES, ROSIE FITZGERALD, ROOTEC.EU, ROELOFS-CONSULTANCY.NL, ROBERT RICHARDS, ROBERT BLYTHIN, ROBERT VAUGHN, RIJSCHOOLBALABAN.NL, RICKMAM DAVID, REMO KURKA, RAMSAY GORDON, RALF FURST, RACINGSUITFR.COM, PORTAIL-LENORVEGIEN.EU, PITHER EMILY, PETRA DOMBROWSKY, PETER HYDE, PAYNE MATTHEW, PAUL STAHL, PAUL CZARNECKI, PAUL CUTHBERTSON, OSCAR TALLEC, NOAH WATERS, NICOLA EVANS, NIAMH SCHOFIELD, NAFEES KHADIJAH, MYRIAM CATRIN MYRIAM CATRIN, MULINOSTYLING.NL, MOYA WATTON MOYA WATTON, MOORHOUSE MIMI, MINGJUN WANG, MIAMA MOORE, MESTON RACHEL, MCGIRR MARGARET, MCCANN STEPHEN, MAX FREITAG, MASOOD AHMED, MARTIN ROSS, MARSHALL PHIL, MARIE URNER, MARGARET COBAIN, MANDY ABENDROTH MANDY ABENDROTH, MADDISON HAMILTON, LOUIE HARRISON, LOGAN MCDONALD, LOCKETT ALAN, LIU WEI, LINKBUILD.BE, LINDA WRIGHT, LILI CHEN, LIKESRUILEN.NL, LIBBY HENDERSON, LIAO ZHANG, LEON ANDREWS, LAUREN BECK, KUFKLUBBEN.SE, KRACHTTOERRADIO.NL, KOVACS CSABA, KLAUS EICHEL, KLAUDIA SCHREIBER, KE XIN XIAN, KATIE WHITE, KATHERINE GILL, KARIMAGOKO BARBARA, KAREN HEARN, KANNOO JAKE, KAARTMETEENKLIK.NL, JONES DAVID, JONATHAN WHITEHOUSE, JOHN

SAUNDERS, JODIE WALSH, JILL BROWN, JAPPELKEARLS.NL, JANINA BADER, JAMES BARKER, JACKETS SALE, JACKETS SALE, HUWAI, HUNT ISABEL, HUIXIAN CHEN, HUI MING ZHANG, HUGHES BEN, HUANGZHILONG HUANGZHILONG, HUANG ZIYOU, HOPKIN JULIE, HONG PUYI, HOLTER GEOFF, HOLLIE HUTCHINSON, HDVESTES.EU, HDLEATHER.CA, HDJACKETS.CA, HARTVOORAJAX.NL, HARLEYJACKETS.CA, HARLEYDAVIDSONJACKET.CA, HANLEY MATT, HAN JIANKANG, HAMBALI FAIZAH, HAIHAI LIN, GREPPERUD EDNA, GREENBLATT SHARON, GIEDRE LUKSAITE, GIBBONS PAMELA, GELOOFINCARNISSE.NL, FRANK WEXLER, FRANK MOENCH, FRANCIS HOFFMAN, FERNANDES SYLVIE, FEI CHEN, FANCHENG CHEN, FABULANT.NL, ERIC LEE, ERGAATEENWERELDVOORJEOPEN.NL, EETCAFEDAVINCI.NL, EDWARDS KRISTIAN, EDWARD BAKER, EAS-ERGO.NL, DOMINIC JOHNSTON, DOMINIC DALY, DEROFOTO.NL, DENG YONGXIANG, DECLAN SUMMERS, DECLAN CHAMBERLAIN, DAVIES MEIRION, DAVID PERKS, DANILO HAYNES, DAN JAMES, CRITCHELL RAY, CRAIG COGHILL, COUPER LEE, CHRYSO MATTHAIOU, CATTERY-ALBATROSS.BE, CATTERALL DEBBIE, CARADVICE.COM LIMITED, CAPON PHIL, CAPLIN ANGELA, CAITLIN MCCARTHY, BRANCEFRANK, BLUESANDFRIENDS.NL, BIRTWISTLE HEATHER, BERND KRUEGER BERND KRUEGER, BELL LISA, BELL JANE, BEALES LOREN, BAIYANG CHEN, BAIBAI CHEN, ANTJE KOCH, ANNA URRO BEN, ANJA AACHEN, ANDREW WOODWARD, AMY NICHOLSON, ALISON TWITCHELL, ALISHA DAVIS, ALICS, AIDAN COX, ADRFOTO.NL, AAFKEHIEMSTRA.NL, 5DAYBOON.BE, 0HK2373, 1022898_, 13802426435_, 15920481060_, 15LEATHERSTORE, 2010VIVI2010, 48EXPRESS-IE, 5_CHEN8, 53MOTORPLAYER, 6_30273, 7HK8705, 9-04765, 913PPLXX,

ABEY LI, ALIYA_SMILE, AMPMAUTOPARTS, ANGELIA STORE, ANGELS_CASTLE, ANIME KEYCHAIN FRANCHISE STORES, ANIME_CHENG, A-ONE PATCH, AREYOURSHOP-A, AREYOURSHOP-V, ARTOFLIFEWAY, AULDLANGSYNE88, AUTODOCTOR1980, BESTMATCH2U, BLABLA200912, CANGNAN VERIZON CRAFTS CO., LTD., CARMOTORS611, CHAN19851985, CHENBO94032, CHENG201568, CHINA_IMAGE, CLIENTFIRSTWORLD, COMEBUYBEST, CONCEPT OF MODIFIED, COS999X, COS-WIGS, CRAZYOURCASEME, CRYASTAL, CYXIF, DASHENG_TIELIANG, DAYS_UP, DREAM-USA, D-SIGN*2014, EASTARINTL9, EKKS01, EPOWERSTORE11, ERLINGERSHOP, ETAWS_DIRECT_SALES, ETERNAL FASHION APPAREL & ACCESSORIES, FAKLUEWT, FANGFANGMART, FASHION-JEWELRY1987, FEI HONG GLOBAL WHOLESALE, FIND_U_SEXY_ALL, FINELY*4, FORTUNE GOD, GCAS1430, GETYOURSAVE, GLOBAL360PROMO, GOLDENAPPLESTORE, GOLDENCROWN11, GOODDEAL.GET, GOOD-DONGDONG, GREATTOOL1015, GREEN'S HOUSE, GT.INTHEBOX, GUANGZHOU KANGNAI GARMENT CO., LTD., H&C ACCESSORIES, HAINING LEEKWAN INTERNATIONAL TRADE CO., LTD., HAPPYBTY, HAVINCHAN, HBMOTO15, HKMERCURYSHOP2012, HONTOP, HTPOW, HUASHENG TRADE CO.,LTD., HXL2012, IBTOM_HOME, INLEADERSTYLE, JINGWL3, JINGZHONG20102010, JIN-MERCHANT NO.1, JOYC365, JPGJ8869AA, KE FENG JEWELRY FACTORY, KENLIN_01, LESS10.LTD, LIFE-CRAZY, LIVECITY2014, LIWEIWEILI001, LUCKY4YOU2012, MAGICKINGDOM699, MAPLEMOTO-SHOP8, MAURO.CO.LTD, MEET YOU FASHION JEWELRY, MEETALLGOOD, MEIKY12072012, MEIMEI8866, MERRYGIFTSSHOW, METOO_MOTORFANS, MICHAEL110813, MILLIONNESC, MOON0602, MOTO_HT,

MOTOO MOTORCYCLE PARTS CO., LTD, MOTOPROS, MOTOR_KNIGHT, MQ.D.STORE, NANA90STORE, NATURALISM JEWELRY STORE, NAZAMUDIN, NEWYOUTUBE, NICE0016, NODOTAUTO, NORDSON-US, ONLINE STORE 237368, ONLY TIN SIGN, PETDOG13, PICKBESTFORYOU, PINKLADY10688, PREETYRIVA, PRETTYLIFE2000, PUNK SHOW TRADING CO., LTD., RACING-PARTS2015, REDDRAGONFLY2013, RINGS2012, ROYMINSHOPV3, RUIRUI2014, SAMUEL88LP, SCHMUCKWELTYANGYANG, SHANGHAI SHUOYU COMMERCE CO., LTD., SHARELIFE01, SHENZHEN ONEOK METAL & PLASTIC PRODUCTS CO., LTD., SHENZHEN QESTBUY ELECTRONICS CO., LTD., SHENZHEN WANGSHUN COMPUTER EMBROIDERY CO., LTD., SHOOT4U2012, SIMBANEVERLAND8, SINO_XU2008, SLAMETMULYONO, SMILESELL2015, SNOW-PANDA2013, STARSHIELD, STITCHRIDER, SUN8-5358, SUNNY_CASTLE, SUNRISE APPLIANCES, SUPER_MOTO, SUPERYUAN0526, SURPASS2015, SUSIEZOE2015, TENVIEW2013, TINAFORYOU, TKSPEED PERFORMANCE LTD.,CO, TOHDA57, TSAN_GLEN, ULTRA_SUPPLIER, WALL ART STORE, WAMOU, WANG878802-2, WEHK179, WONDERFULWISH, WZY0825, XIUP.2014, XPHEONIX, XY2015, Y&H YOLANDA HOUSE, YCXTRADE, YESALL0601, YESERUS2016, YFMEMBER, YIWU SHIRAN ORNAMENTS FACTORY, YOLANDABABY777, YUANQIU8790, ZH_US05, ZHAYANSHAN, ZHONGSHAN WANJUN CRAFTS MANUFACTURER CO., LTD., ZHONGSHAN YIXUAN CRAFT AND GIFT CO., LTD., ZZ0WANSHEN, and ZZAHUAN identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b)

and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under

the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are

so related to the federal claims that they form part of the same case or controversy and derive

from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto

(collectively, the "Defendant Internet Stores").  Specifically, Defendants are reaching out to do

business with Illinois residents by operating one or more commercial, interactive Defendant

Internet Stores through which Illinois residents can purchase products bearing counterfeit

versions of Harley-Davidson's trademarks.  Each of the Defendants has targeted sales from

Illinois residents by operating online stores that offer shipping to the United States, including

Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit

Harley-Davidson products bearing counterfeit versions of Harley-Davidson's trademarks to

residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in

interstate commerce, and has wrongfully caused Harley-Davidson substantial injury in the State

of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Harley-Davidson to combat online counterfeiters who trade upon Harley-Davidson's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including motorcycle parts, apparel, jewelry, and other goods, using counterfeit versions of Harley-Davidson's federally registered trademarks (the "Counterfeit Harley-Davidson Products").  Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Harley-Davidson products, while actually selling Counterfeit Harley-Davidson Products to unknowing consumers.   The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Harley-Davidson Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Harley-Davidson is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Harley-Davidson Products over the Internet.  Harley-Davidson has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff Harley-Davidson**

4.      Plaintiff H-D U.S.A., LLC is a Wisconsin limited liability company having a principal place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin 53208, and is the owner of the trademark rights asserted in this action.

5.      Harley-Davidson is a world-famous manufacturer of motorcycles and a wide variety of other products and services, including apparel, jewelry, leather goods, and assorted accessories.   Founded in 1903, Harley-Davidson has manufactured, promoted and sold motorcycles and related products for over 110 years.

6.      Since at least as early as 1903, Harley-Davidson has used and promoted the HARLEY-DAVIDSON name and trademark in connection with motorcycles, motorcycle parts and accessories.

7.      Since at least as early as 1910, Harley-Davidson has used its Bar & Shield Logo. The Bar & Shield Logo and variations thereof, including, but not limited to, those shown below (collectively, the "Bar & Shield Logo"), are used for motorcycles and related products and services.



8.      Since about 2000, Harley-Davidson has used its Willie G. Skull Logo (or variations thereof), including, but not limited to, those shown below (collectively, the "Willie G. Skull Logo"), for motorcycles and related products and services.




9.      Since about 2008, Harley-Davidson has used its Dark Custom Logo (or variations thereof), including, but not limited to, as shown below (collectively, the "Dark Custom Logo"), for motorcycles and related products and services.



10.      Harley-Davidson has continuously sold motorcycles and related goods under the HARLEY-DAVIDSON, Bar & Shield Logo, Willie G. Skull Logo, Dark Custom Logo, and other trademarks (collectively, the "HARLEY-DAVIDSON Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the HARLEY-DAVIDSON Trademarks.  Harley-Davidson's use of the marks has also built substantial goodwill in and to the HARLEY-DAVIDSON Trademarks.  The HARLEY-DAVIDSON Trademarks are famous marks and valuable assets of Harley-Davidson.  Harley-Davidson Products typically include at least one of the registered HARLEY-DAVIDSON Trademarks.

11.    For generations, the Harley-Davidson brand has been the undisputed world leader in the field of motorcycles and related products, including those which prominently display the famous, internationally recognized, and federally registered HARLEY-DAVIDSON Trademarks (collectively, the "Harley-Davidson Products").

12.    Several of the HARLEY-DAVIDSON Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 0,507,163 | HARLEY-DAVIDSON | Mar. 01, 1949 | For: Motorcycle shirts; sweaters; breeches; neckties; coveralls; rain coats and hats; jackets; helmets; caps; and boots in class 025 |
| 0,508,160 | HARLEY-DAVIDSON | Apr. 05, 1949 | For: Electric lamps and spare parts for same; spark plugs; and electric signs in classes 007, 009, 011, 012, and 015 |
| 0,526,750 | HARLEY – DAVIDSON | Jun. 27, 1950 | For: Motorcycles and structural parts thereof; accessories-namely, intermediate stands, seats, foot rests and extensions, windshields, fender tips, exhaust stacks, grips, name plates, saddle covers, luggage carriers, license frames, foot pedal pads, tandem seats, foot rests, and rear view mirrors in classes 007, 012, 022, and 027 |
| 1,078,871 | HARLEY-DAVIDSON | Dec. 06, 1977 | For: Vehicles-namely, motorcycles in class 012 |
| 1,205,380 | MOTOR HARLEY-DAVIDSON COMPANY | Aug. 17, 1982 | For: Motorcycles in class 012<br><br>For: Clothing-Namely, T-Shirts in class 025 |

| 1,219,955 | HARLEY-DAVIDSON | Dec. 14, 1982 | For: Parts and service manuals for motorcycles, parts catalogs for motorcycles, newsletters and magazines dealing with motorcycles, calendars, posters, and decals in class 016 |
|---|---|---|---|
| 1,224,868 |  | Jan. 25, 1983 | For: Decorative Items for Motorcycles-Namely, Medallions in class 006<br><br>For: Fitted Motorcycle Covers in class 012<br><br>For: Key Ring Fobs in class 014<br><br>For: General Purpose Decals; Decorative Items for Motorcycles-Namely, Decals, and Metallic Foil Decals in class 016<br><br>For: Drinking Cups and Mugs in class 021<br><br>For: Clothing-Namely, Jackets, T-Shirts, Tank Tops, Sweat Shirts, Bandannas, Hats, Caps, and Boots in class 025<br><br>For: Stick, Lapel, and Hat Pins, All of Nonprecious Metals, and Decorative Cloth Patches in class 026<br><br>For: Cigarette Lighters in class 034 |
| 1,234,404 | HARLEY-DAVIDSON | Apr. 12, 1983 | For: Sunglasses and Protective Helmets for Motorcyclists in class 009<br><br>For: Clothing-Namely, Jackets, Pants, Shirts, T-Shirts, Vests, Jeans, Riding Suits, Bandannas, Rain Suits, Shorts, Nightgowns, Halters, Underwear, Tank Tops, Sweatshirts, Night Shirts, Socks, |

15

| | | | Gloves, Hats, Caps and Boots in class 025 |
|---|---|---|---|
| 1,263,936 |  | Jan. 17, 1984 | For: First Aid Kits Containing General Purpose First Aid Supplies Such as Bandages, Bandage Compressors, Ammonia Inhalant, Tourniquets, Anti-Bacterial Solutions, Burn Emollient, and Picric Acid Gauze in class 005<br><br>For: Medallions and non-luminous non-mechanical signs made primarily of metal and plastic in class 006<br><br>For: Sunglasses, battery chargers, protective motorcycle crash helmets and luminous signs in class 009<br><br>For: Electric lamps in class 011<br><br>For: mud flaps, fuel door plates, air cleaners, radio caddies, motorcycle tank and fender sets, leather motorcycle bags and motorcycles in class 012<br><br>For: Jewelry-Namely, Necklaces, Rings, and Key Fobs in class 014<br><br>For: Posters, paper decals and playing cards in class 016<br><br>For: Wallets in class 018<br><br>For: Decorative Wall Plaques and Mirrors in class 020<br><br>For: Mugs and Insulated Drinking Steins in class 021<br><br>For: Towels in class 024<br><br>For: Clothing-Namely, T-Shirts, |

| | | | |
|---|---|---|---|
| | | | Jackets, Blue Jeans, Sweat Shirts, Underwear, Bandanas, Headwear, Socks, Boots, Cycle Riding Suits, Belts and Suspenders in class 025 <br><br> For: Embroidered patches, belt buckles and lapel, hat and stick pins all of non-precious metals in class 026 <br> For: Cigarette lighters in class 034 |
| 1,311,457 | HARLEY-DAVIDSON | Dec. 25, 1984 | For: Repair and Servicing of Motorcycles in class 037 <br><br> For: Retail store services in the field of motorcycles in class 042 |
| 1,352,679 | HARLEY | Aug. 06, 1985 | For: Motorcycles in class 012 |
| 1,406,876 | HARLEY | Aug. 26, 1986 | For: Clothing; namely--tee shirts for men, women and children; knit tops for women and girls; and children's shirts in class 025 |
| 1,450,348 | HARLEY-DAVIDSON | Aug. 04, 1987 | For: metal articles, namely, key fobs, key chains and license plate holders in class 006 <br><br> For: Knife sheaths in class 008 <br><br> For: Necklaces, earrings, pins of non-precious metals, clocks and watches in class 014 <br><br> For: Children's books, bumper stickers, removable tattoos, pressure sensitive decals, checkbook covers, and playing cards in class 016 <br><br> For: Leather goods, namely, purses, wallets, duffle bags, motorcycle saddle bags, and key fobs in class 018 <br><br> For: Mirrors in class 020 |

| | | | |
|---|---|---|---|
| | | | For: Mugs, drinking glasses, coasters, decanters, cups, and plastic mugs in class 021 <br><br> For: Towels, and bed spreads in class 024 <br><br> For: Sweat pants, sweaters, suspenders, scarves, bandanas, leather clothing, namely, jackets, vests, gloves, jeans, chaps, tops, boots, shorts, caps, and belts in class 025 <br><br> For: Stuffed toy animals, toy banks, and model kits in class 028 <br><br> For: Cigarette cases, lighter cases, and cigarette lighters in class 034 |
| 1,511,060 |  | Nov. 01, 1988 | For: Clothing, namely, boots, sweat shirts, jeans, hats, caps, scarves, motorcycle riding suits, neck ties, shirts, t-shirts, jackets, vest, ladies tops, and bandanas in class 025 |
| 1,602,474 | HARLEY-DAVIDSON | Jun. 19, 1990 | For: Belt buckles in class 026 |
| 1,606,282 | HARLEY-DAVIDSON | Jul. 17, 1990 | For: Safety goggles, protective helmets and sunglasses in class 009 |
| 1,621,383 | HARLEY-DAVIDSON | Nov. 06, 1990 | For: Model toy motorcycles, miniature motorcycle replicas, model toy trucks, and electronically operated toy motorcycles in class 028 |
| 1,660,539 |  | Oct. 15, 1991 | For: Knives; namely, buck knives, sporting and hunting knives, folding pocket knives, knife cases therefor, and tool kits comprising wrenches and pliers in class 008 <br><br> For: sunglasses, and motorcycle parts; namely, gauges, batteries, |

|  |  |  | and cruise controls in class 009 |
|  |  |  | For: Flashlights in class 011 |
|  |  |  | For: motorcycles and motorcycle parts; namely, air cleaners, drive belts, belt guards, brakes, chains, clutches, crankcases, engine cylinders, fenders and fender supports, footboards, forks, fuel tanks, leg guards, handlebars, cylinder heads, mirrors, oil filters, oil pumps, seats, shock absorbers, backrests, wheels, and windshields in class 012 |
|  |  |  | For: Ankle bracelets, bracelets, earrings, necklaces, rings, tie tacks, watch bands, watches, wall clocks, and ornamental lapel pins in class 014 |
|  |  |  | For: Books about motorcycles, calendars, decals, pens, photo albums, posters, and removable tattoos in class 016 |
|  |  |  | For: Holders for cans in the nature of a rubber cylinder, duffle bags, garment bags, key fobs, suitcases, and wallets in class 018 |
|  |  |  | For: Wall mirrors and wall plaques in class 020 |
|  |  |  | For: Drinking glasses, mugs, and can holders in the nature of an insulated rubber cylinder in class 021 |
|  |  |  | For: Towels in class 024 |
|  |  |  | For: Belts, chaps, denim pants, gloves, hats, caps, jackets, neckties, night shirts, pants, rain suits, shirts, socks, suspenders, sweaters, sweatshirts, tank tops, athletic |

| | | | |
|---|---|---|---|
| | | | shoes, shoes, boots, t-shirts, underwear, vests and wristbands in class 025<br><br>For: Belt buckles not made of precious metal, boot chains, and embroidered patches for clothing in class 026<br><br>For: Automobile floor mats in class 027<br><br>For: Toy trucks in class 028<br><br>For: Beer in class 032<br>For: Lighter holders, cigarette cases, lighter cases, and lighters, all of the foregoing not being made of precious metal in class 034 |
| 1,683,455 | HARLEY | Apr. 14, 1992 | For: Shirts, tank tops, boots, and sweatshirts in class 025 |
| 1,708,362 | HARLEY | Aug. 18, 1992 | For: Embroidered patches for clothing in class 026 |
| 1,711,882 |  | Sep. 01, 1992 | For: Embroidered patches for clothing in class 026 |
| 1,741,456 |  | Dec. 22, 1992 | For: Embroidered patches and belt buckles not of precious metals in class 026 |
| 1,793,137 | HARLEY OWNERS GROUP | Sep. 14, 1993 | For: Hunting knives, pocket knives and knife cases in class 008<br><br>For: Road atlases, newsletters, magazines relating to motorcycling, playing cards, and decals in class |

| | | | |
|---|---|---|---|
| | | | 016 |
| | | | For: Key fobs, luggage, tote bags, and travel bags in class 018 |
| | | | For: Plastic and ornamental pins and badges in class 020 |
| | | | For: Glasses, mugs, cups, and insulated can holders in class 021 |
| | | | For: Textile flags and banners in class 024 |
| | | | For: Clothing, namely, shirts, sweatshirts, t-shirts, caps, hats, jacket, vests, and bandanas in class 025 |
| | | | For: Belt buckles and ornamental patches in class 026 |
| 2,281,489 | **HARLEY-DAVIDSON** | Sep. 28, 1999 | For: Necklaces, bracelets, and watch bands in class 014 |
| 2,376,674 | | Aug. 15, 2000 | For: Metal locks in class 006 |
| | | | For: Motorcycle parts, namely, spark plugs in class 007 |
| | | | For: Optical and safety equipment, namely, sunglasses and motorcycle helmets in class 009 |
| | | | For: Motorcycle parts, namely, mirrors, drive belts made of rubber, swing arm pivot covers, axle nut covers, handgrips, oil pump covers, air cleaner covers, derby covers, caliper covers, seats, brake pedals, motorcycle saddlebags, saddlebag liners, timer covers and fender tips in class 012 |
| | | | For: Jewelry in class 014 |
| | | | For: Leather goods, namely, traveling bags and saddlery in class 018 |

| | | | For: Leather gloves in class 025 |
|---|---|---|---|
| 2,973,501 |  | Jul. 19, 2005 | For: Bandannas, jackets, shirts, caps, hats, T-shirts, and leather jackets in class 025 |
| 2,979,002 |  | Jul. 26, 2005 | For: Drinking glasses, mugs, and beverage glassware in class 021 |
| 3,018,481 |  | Nov. 22, 2005 | For: Ornamental novelty pins in class 026 |

| 3,074,276 |  | Mar. 28, 2006 | For: Metal key chains in class 006 |
| 3,185,946 |  | Dec. 19, 2006 | For: Jackets, baseball hats, caps, shirts and T-shirts in class 025 |
| 3,304,863 |  | Oct. 02, 2007 | For: Metal key fobs and non-luminous and non-mechanical metal signs in class 006 |
| 3,393,839 |  | Mar. 11, 2008 | For: House mark for a full line of clothing, footwear and headwear in class 025 |
| 3,393,840 | HARLEY-DAVIDSON | Mar. 11, 2008 | For: House mark for a full line of clothing, footwear and headwear in class 025 |
| 3,447,304 |  | Jun. 17, 2008 | For: A full line of clothing in class 025 |

| 3,490,890 | HARLEY-DAVIDSON | Aug. 26, 2008 | For: House mark for a line of motorcycles, structural parts for motorcycles and related motorcycle accessories, namely, seats, backrests, decorative fuel tank panels, transmission gears, fuel tanks, wheel sprockets, gear shifts, clutches, battery covers and straps, front rear, and intermediate kickstands, hub caps, shift knobs, foot rests and extensions, windshields, leg shields, fender tips, brake pedals, handlebar grips, safety guards, namely, bars for attachment to motorcycles, steering dampers, shock absorbers, spare wheels, spare wheel carriers, boot guards, namely, mud flaps and fenders, saddle covers, luggage carriers, license plate frames, handlebar cross bars, foot pedal pads, tank and fender pads, rearview, fenders and skirts, and wheel balance weights in class 012 |
|---|---|---|---|
| 3,559,365 |  | Jan. 13, 2009 | For: House mark for a line of motorcycles, structural parts for motorcycles, and related motorcycle accessories, namely, seats, backrests, decorative fuel tank panels, transmission gears, fuel tanks, wheel sprockets, gear shifts, clutches, battery covers and straps, front , rear, and intermediate kickstands, hub caps, shift knobs, foot rests and extensions, windshields, leg shields, fender tips, brake pedals, handlebar grips, safety guards, namely, bars for attachment to motorcycles, steering dampers, shock absorbers, spare wheels, spare wheel carriers, boot guards, namely, mud flaps and fenders, saddle covers, luggage carriers, license plate frames, handlebar cross bars, foot pedal |

| | | | |
|---|---|---|---|
| | | | pads, tank and fender pads, rearview mirrors, fenders and skirts, and wheel balance weights in class 012 |
| 3,690,031 | HARLEY-DAVIDSON | Sep. 29, 2009 | For: Non-luminous, non-mechanical tin signs, non-luminous, non-mechanical metal signs, tool boxes of metal, tool chests of metal, key rings of metal, and metal personal identification tags in class 006 |
| 3,697,874 |  | Oct. 20, 2009 | For: Motorcycles and structural parts therefor in class 012 |
| 3,697,875 |  | Oct. 20, 2009 | For: Shirts, hats, caps in class 025 |

| | | | |
|---|---|---|---|
| 4,465,604 |  | Jan. 14, 2014 | For: Clothing, namely, shirts, hats, caps, belts, jackets, gloves, sweatshirts, lounge pants, and wrist bands in class 025 |
| 4,465,650 |  | Jan. 14, 2014 | For: Motorcycles and structural parts therefor in class 012 |
| 4,487,292 |  | Feb. 25, 2014 | For: Motorcycles and structural parts therefore in class 012 |
| 4,487,293 |  | Feb. 25, 2014 | For: Motorcycle modification and customization; providing a web site featuring information regarding motorcycle customization services; providing consultation services regarding motorcycle customization in class 037 |

| 4,528,269 |  | May 13, 2014 | For: Jewelry, namely, earrings, necklaces in class 014 |
|---|---|---|---|
| 4,601,391 |  | Sep. 09, 2014 | For: Cell phone covers in class 009 |
| 4,601,394 |  | Sep. 09, 2014 | For: Cell phone covers in class 009 |
| 4,771,442 |  | Jul. 14, 2015 | For: A full line of jewelry in class 014 |
| 4,844,360 |  | Nov. 03, 2015 | For: Parts of motorcycles, excluding parts of all motors and engines, namely, derby covers, air cleaner trim, timer covers, battery cover band, fuel caps, brake caliper inserts, fender skirts, console doors, head lamp visors, medallions, foot pegs, gearshift linkages, foot board covers, handlebar clamps, hand grips, fuel gauges, guard rail inserts, axle nut covers, breather end cap, valve stem caps, foot boards, turn signal visors, pivot bolt covers, tank panel, fender tip lens kit, console insert, air cleaner |

| | | | cover, decorative end caps, mirrors and mounting hardware for the aforesaid goods in class 012 |
|---|---|---|---|

13.     The above U.S. registrations for the HARLEY-DAVIDSON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.   The registrations for the HARLEY-DAVIDSON Trademarks constitute *prima facie* evidence of their validity and of Harley-Davidson's exclusive right to use the HARLEY-DAVIDSON Trademarks pursuant to 15 U.S.C. § 1057 (b).   True and correct copies of the United States Registration Certificates for the above-listed HARLEY-DAVIDSON Trademarks are attached hereto as **Exhibit 1**.

14.     The HARLEY-DAVIDSON Trademarks are distinctive when applied to the Harley-Davidson Products, signifying to the purchaser that the products come from Harley-Davidson and are manufactured to Harley-Davidson's quality standards.   Whether Harley-Davidson manufactures the products itself or contracts with others to do so, Harley-Davidson has ensured that products bearing the HARLEY-DAVIDSON Trademarks are manufactured to the highest quality standards.

15.     The HARLEY-DAVIDSON Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Harley-Davidson Products have enabled the Harley-Davidson brand to achieve widespread recognition and fame and have made the HARLEY-DAVIDSON Trademarks some of the most well-known marks in the world.   The widespread fame, outstanding reputation, and significant goodwill associated with the Harley-Davidson brand have made the HARLEY-DAVIDSON Trademarks valuable assets of Harley-Davidson.

16.    Genuine Harley-Davidson Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Harley-Davidson brand.

17.    Harley-Davidson has numerous licensees in the United States that are authorized to sell a wide range of Harley-Davidson Products.  These licensees have offered a wide variety of products under the Harley-Davidson Trademarks for decades.

18.    Harley-Davidson has standards and guidelines to which all authorized licensed products branded with the Harley-Davidson Trademarks must adhere.  These standards and guidelines allow Harley-Davidson to control the quality and appearance, among other things, of licensed Harley-Davidson Products.  Moreover, all licensed Harley-Davidson Products are subject to Harley-Davidson's prior written approval before they are manufactured, promoted, and sold to the public.

19.    Harley-Davidson Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Harley-Davidson Products are instantly recognizable as such.  In the United States and around the world, the Harley-Davidson brand has come to symbolize high quality, and Harley-Davidson Products are among the most recognizable in the world.  Harley-Davidson Products are distributed and sold to consumers through a network of nearly 700 authorized dealers located throughout the country and numerous other retail outlets.

20.    Genuine Harley-Davidson Products have also been promoted and sold at the official Harley-Davidson.com website and through authorized dealers' websites for many years. Sales of Harley-Davidson Products via the Harley-Davidson.com website are significant.  The

Harley-Davidson.com website features proprietary content, images and designs exclusive to the Harley-Davidson brand.

21.     Harley-Davidson Products and the Harley-Davidson Trademarks have received significant unsolicited media coverage for many years, including, for example, in national publications such as *Business Week, The Chicago Tribune, The New York Times, The Wall Street Journal, The Washington Post,* and *USA Today,* as well as in numerous national television programs and online publications and websites, such as MSNBC, CNN Money, cnn.com, and Yahoo! Finance.

22.     Harley-Davidson and its dealers and licensees have sold many billions of dollars of products and services under the Harley-Davidson Trademarks over the years, and have expended millions of dollars advertising and promoting those marks through virtually every media.   For example, Harley-Davidson has promoted its products and marks through dealer promotions, customer events, direct mailings, national television, print, and radio advertisements, and the Internet.   As a result, products bearing the HARLEY-DAVIDSON Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Harley-Davidson.   Harley-Davidson Products have become among the most popular of their kind in the U.S. and the world.   The HARLEY-DAVIDSON Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.

23.     As a result of Harley-Davidson's significate promotional efforts, commercial success, and popularity, the HARLEY-DAVIDSON brand has been ranked annually for the past decade among the top 100 most valuable brands in the world by Interbrand, a leading independent branding firm.   In 2015, Interbrand estimated the value of the HARLEY-

DAVIDSON brand at US $5.46 billion. The goodwill associated with the HARLEY-DAVIDSON brand and the HARLEY-DAVIDSON Trademarks is of incalculable and inestimable value to Harley-Davidson.

**The Defendants**

24.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Harley-Davidson Products to consumers within the United States, including the State of Illinois.

25.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the HARLEY-DAVIDSON Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Harley-Davidson to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Harley-Davidson will take appropriate steps to amend the Amended Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

26.     The success of the Harley-Davidson brand has resulted in its significant counterfeiting.  Consequently, Harley-Davidson has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Harley-Davidson has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Harley-Davidson Products to consumers in this Judicial District and throughout the United States.  Despite Harley-Davidson's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

27.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.  Numerous Defendant Domain Names also incorporate the HARLEY-DAVIDSON Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such

counterfeit sites from Harley-Davidson's website or another authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Harley-Davidson has not licensed or authorized Defendants to use any of the HARLEY-DAVIDSON Trademarks, and none of the Defendants are authorized retailers of genuine Harley-Davidson Products.

28.     Many Defendants also deceive unknowing consumers by using the HARLEY-DAVIDSON Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Harley-Davidson Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Harley-Davidson Products. Other Defendants only show the HARLEY-DAVIDSON Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Harley-Davidson Products.

29.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities

listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

30.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Harley-Davidson Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Harley-Davidson Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Harley-Davidson's official Harley-Davidson.com website.

31.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located

outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

32. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Harley-Davidson's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

33. Defendants, without any authorization or license from Harley-Davidson, have knowingly and willfully used and continue to use the HARLEY-DAVIDSON Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Harley-Davidson Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Harley-Davidson Products into the United States, including Illinois.

34. Defendants' use of the HARLEY-DAVIDSON Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Harley-Davidson Products,

including the sale of Counterfeit Harley-Davidson Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Harley-Davidson.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35.     Harley-Davidson hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34.

36.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered HARLEY-DAVIDSON Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The HARLEY-DAVIDSON Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Harley-Davidson Products sold or marketed under the HARLEY-DAVIDSON Trademarks.

37.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the HARLEY-DAVIDSON Trademarks without Harley-Davidson's permission.

38.     Harley-Davidson is the exclusive owner of the HARLEY-DAVIDSON Trademarks.  Harley-Davidson's United States Registrations for the HARLEY-DAVIDSON Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Harley-Davidson's rights in the HARLEY-DAVIDSON Trademarks, and are willfully infringing and intentionally using counterfeits of the HARLEY-DAVIDSON Trademarks.   Defendants' willful, intentional and unauthorized use of the HARLEY-

DAVIDSON Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Harley-Davidson Products among the general public.

39.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40.     Harley-Davidson has no adequate remedy at law, and if Defendants' actions are not enjoined, Harley-Davidson will continue to suffer irreparable harm to its reputation and the goodwill of the HARLEY-DAVIDSON Trademarks.

41.     The injuries and damages sustained by Harley-Davidson have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Harley-Davidson Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

42.     Harley-Davidson hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 41.

43.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Harley-Davidson Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Harley-Davidson or the origin, sponsorship, or approval of Defendants' Counterfeit Harley-Davidson Products by Harley-Davidson.

44.     By using the HARLEY-DAVIDSON Trademarks on the Counterfeit Harley-Davidson Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Harley-Davidson Products.

45.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Harley-Davidson Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46.     Harley-Davidson has no adequate remedy at law and, if Defendants' actions are not enjoined, Harley-Davidson will continue to suffer irreparable harm to its reputation and the associated goodwill of the HARLEY-DAVIDSON Trademarks.

## COUNT III
### CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF HARLEY-DAVIDSON'S TRADEMARKS

47.     Harley-Davidson hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 46.

48.     Harley-Davidson is the exclusive owner of the HARLEY-DAVIDSON Trademarks.  The U.S. Registrations for the HARLEY-DAVIDSON Trademarks (Exhibit 1) are in full force and effect.  Additionally, the HARLEY-DAVIDSON Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

49.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the HARLEY-DAVIDSON Trademarks have acted with bad faith intent to profit from the unauthorized use of the HARLEY-DAVIDSON Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the HARLEY-DAVIDSON Trademarks.

50.     Defendants have no intellectual property rights in or to HARLEY-DAVIDSON Trademarks.

51.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

52.     Harley-Davidson has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the HARLEY-DAVIDSON Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Harley-Davidson.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

53.     Harley-Davidson hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 52.

54.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Harley-Davidson Products as those of Harley-Davidson, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Harley-Davidson Products, representing that their products have Harley-Davidson's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

55.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

56.     Harley-Davidson has no adequate remedy at law, and Defendants' conduct has caused Harley-Davidson to suffer damage to its reputation and associated goodwill.  Unless enjoined by the Court, Harley-Davidson will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

39

## PRAYER FOR RELIEF

WHEREFORE, Harley-Davidson prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the HARLEY-DAVIDSON Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Harley-Davidson Product or is not authorized by Harley-Davidson to be sold in connection with the HARLEY-DAVIDSON Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Harley-Davidson Product or any other product produced by Harley-Davidson, that is not Harley-Davidson's or not produced under the authorization, control, or supervision of Harley-Davidson and approved by Harley-Davidson for sale under HARLEY-DAVIDSON Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Harley-Davidson Products are those sold under the authorization, control or supervision of Harley-Davidson, or are sponsored by, approved by, or otherwise connected with Harley-Davidson;

   d. further infringing the HARLEY-DAVIDSON Trademarks and damaging Harley-Davidson's goodwill;

   e. otherwise competing unfairly with Harley-Davidson in any manner; and

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Harley-Davidson, nor authorized by Harley-Davidson to be sold or offered for sale, and which bear any of Harley-Davidson's trademarks, including the HARLEY-DAVIDSON Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof; and

2) Entry of an Order that, at Harley-Davidson's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Harley-Davidson, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Harley-Davidson's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Harley-Davidson's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Harley-Davidson's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars,

including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a.  disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the HARLEY-DAVIDSON Trademarks;

    b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the HARLEY-DAVIDSON Trademarks; and

    c.  take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Harley-Davidson all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HARLEY-DAVIDSON Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Harley-Davidson be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the HARLEY-DAVIDSON Trademarks and $100,000 per domain name incorporating any of the HARLEY-DAVIDSON Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That Harley-Davidson be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 8th day of August 2016.     Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff*
*H-D U.S.A., LLC*

43